EXHIBIT A

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SCOTT ANDERSON

## DEFENDANTS

TELEPERFORMANCE SE d/b/a TPUSA, Inc. and ALLA KOYFMAN

**(b)** County of Residence of First Listed Plaintiff  LEHIGH - PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  NEW CASTLE - DE
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

KENT PETRY, ESQ. - 1135 MEARNS ROAD, UNIT 3387
WARMINSTER, PA 18974 Telephone: 215-322-1084

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question
  *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | **INTELLECTUAL** | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability | [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine | Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | Act | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability | [ ] 380 Other Personal | [ ] 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Property Damage | Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 751 Family and Medical | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | [ ] 864 SSID Title XVI | [x] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ | Sentence | | or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | [ ] 462 Naturalization Application | | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other | [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 USC 1030 - Computer Fraud and Abuse Act

Brief description of cause:
Computer Fraud and Abuse - Defendants exceeded their authority to access computers and data to access Plaintiff's accounts.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
49,941.08

CHECK YES only if demanded in complaint:

JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
09/25/2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## IN THE UNITED STATED DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT ANDERSON<br>3623 Barrington Drive<br>Allentown, PA 18104<br>Lehigh County<br>*Plaintiff*,<br><br>*v.*<br><br>TELEPERFORMANCE SE d/b/a<br>        TPUSA, Inc.<br>c/o The Corporation Trust Co.<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>And<br><br>ALLA KOYFMAN<br>7100 115th Ct. SE<br>Newcastle, WA 98056<br><br>                    *Defendants.* | Civil Action No.: **25-5527**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Scott Anderson ("Plaintiff" or "Anderson"), an individual, through undersigned counsel, hereby states the following as his Complaint against Defendants: Teleperformance SE d/b/a TPUSA, Inc. ("TPUSA"), a Delaware Corporation; and Alla Koyfman ("Koyfman"), an individual; (collectively "Defendants"). In support thereof, Plaintiff alleges as follows:

I. **PARTIES**

   1.    Scott Anderson is an individual residing in Lehigh County, Pennsylvania.

   2.    Defendant Teleperformance SE d/b/a TPUSA, Inc. is a Delaware Corporation with a registered corporate address c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

3.     Upon information and belief, TPUSA is registered as a foreign business corporation in Pennsylvania, and their principal place of business is located in Utah.

4.     Alla Koyfman is an individual, previously known to be an employee of T-Mobile USA, Inc. ("T-Mobile") with current listed addresses of 7100 115th Ct. SE, Newcastle, WA 98056 and 5056 SE 119th Avenue, Bellevue, WA 98006.

5.     At all times material hereto, Defendants acted and/or failed to act in person and/or through duly authorized agents, servants, workmen, and/or employees, acting on behalf of Defendants.

## II.     **VENUE AND JURISDICTION**

6.     This Court has original jurisdiction of this matter under 28 U.S.C. §1331, as this matter involves laws of the United States, over which this Court has original jurisdiction.

7.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district, and moreover is where a substantial part of the property that is the subject of this action is/was situated.

## III.     **FACTUAL BACKGROUND**

8.     This action is brought by Plaintiff, a wireless customer of T-Mobile who, due to the conduct of Defendants, has lost almost fifty thousand dollars' worth of his property in an incident of an identity theft crime known as "SIM swapping."

9.     A subscriber identity module, widely known as a "SIM card," stores user data in phones on the Global System for Mobile (GSM) network, the radio network used by T-Mobile to provide cellular telephone service to its subscribers.

10.     SIM cards are principally used to authenticate cellphone subscriptions, as without a

SIM card, GSM phones are not able to connect to T-Mobile's telecommunications network.

11.    However, if placed in the wrong hands, a SIM card can also be used to steal someone's identity.

12.    A SIM-swap can be particularly devastating because many internet services – including email, online banks, and cryptocurrency exchanges, rely on mobile phone numbers to help users recover and/or validate account access.

13.    As stated by the FBI, "[o]nce the SIM is swapped, the victim's calls, texts, and other data are diverted to the criminal's device. This access allows criminals to send "Forgot Password" or "Account Recovery" requests to the victim's email and other online accounts associated with the victim's mobile telephone number.".[1]

14.    One way in which this occurs, according to the FBI, is that third parties will "pay off a mobile carrier employee to switch a victim's mobile number to a SIM card in the criminal's possession." *Id.*

15.    In the instant matter, on or around January 18, 2023 Alla Koyfman used or allowed her T-Mobile credentials to be used in order to illegally access Plaintiff's wireless cell phone account and perform an unauthorized SIM-swap to change control of Plaintiff's phone to a different phone not under his control.

16.    Alla Koyfman's credentials were used in connection with a virtual desktop machine operated by TPUSA to access Plaintiff's account(s).

17.    At the time of this occurrence, Defendants were aware of a wave of email and SMS phishing scams targeting them and their employees, yet took no effective steps to prevent or address the same.

---

[1] https://www.ic3.gov/Media/Y2022/PSA220208.

18.     Teleperformance was further on notice from both T-Mobile and the federal government of the risks of SIM-swap fraud and social engineering attacks, through multiple industry alerts such as a 2019 warning from the Federal Trade Commission ("FTC") titled "SIM Swap Scams: How to Protect Yourself", which explained the increasing prevalence and danger of SIM-swap fraud.

19.     The FTC explicitly cautioned businesses about the growing use of SIM swapping in both identity and cryptocurrency thefts.

20.     Additionally, regulatory guidance from the Federal Communications Commission ("FCC"), contractual requirements by T-Mobile, and consumer data protection frameworks further obligated Teleperformance to implement robust employee training, multi-factor authentication, and internal safeguards to prevent unauthorized account access.

21.     Despite the foregoing, Teleperformance failed to implement and/or maintain sufficient safeguards in order to prevent unauthorized SIM-swaps and illegal account access utilizing their hardware and software.

22.     Teleperformance's failure to act on the information and duties provided to it, especially given its role as a telecommunications company handling sensitive customer data, demonstrates clear negligence as well as an intentional disregard of known security threats and vulnerabilities.

23.     As a result of Defendants' misconduct as alleged herein, including negligence in protecting customer information, negligent hiring and supervision of personnel, and violations of federal and state laws designed to protect wireless service consumers, Plaintiff had their cryptocurrency stolen.

24.     Said cryptocurrency had an estimated value at the time of loss of approximately $49,941.08.

25.     This theft of Plaintiff's property was a direct result of the actions and practices of

Defendants.

26.     The full extent of their participation is known only to Defendants and will need to be uncovered throughout the course of discovery.  Upon information and belief, this participation includes, but is not limited to: Defendants knowingly, intentionally, recklessly and/or negligently obtaining or providing access to customer accounts to individuals which they know, or should have known, have no right to access those accounts; Defendants taking affirmative and intentional steps to conceal the SIM-swap occurrence and failing to alert the customer, law enforcement, or anyone else (including T-Mobile's help desk) in a timely fashion of the occurrence of such an attack, the unauthorized use of their devices and/or credentials; Defendants intentionally and affirmatively destroying or failing to preserve evidence they knew, or should have known, would be the subject of litigation and which would enable customers such as Plaintiff to track their stolen property and identify those responsible; Defendants intentionally concealing the identities of those responsible; Defendants intentionally, negligently and/or recklessly failing to follow protocols and procedures ostensibly put in place by Defendants, statutes and/or T-Mobile, USA Inc., in order to avoid these kinds of issues; and otherwise taking action or failing to take actions which perpetuated the theft of Plaintiff's property and the benefit and use of the same.

15.     Specifically, the following property was stolen from Plaintiff on or around January 18, 2023, as a direct and proximate result of Defendants' acts and omissions:

| Date of Theft | Location From Which Assets Were Stolen | Cryptocurrency / Assets Stolen | Approximate Value of Assets At Time of Loss |
|---|---|---|---|
| Jan. 18, 2023 | Coinbase | 94,269,361,415,581 BEZOGE | $49,941.08 |
|  |  | TOTAL | $49,941.08 |

27.     Plaintiff was a victim of a SIM-swap and subsequent theft that was, if not entirely perpetrated by, then at the very least effectuated and facilitated by Defendants.

28.     Plaintiff did not authorize Defendants or anyone else to use, disclose, share, or access his confidential information which was maintained on her cellular account.

29.     On the contrary, Plaintiff had an objectively reasonable expectation and a fundamental right to conduct his personal activities without observation, intrusion or interference.

30.     Therefore, any use, disclosure, or access to Plaintiff's account or confidential information on or around January 18, 2023 was unauthorized and unlawful.

31.     Upon information and belief, Defendants, despite a legal obligation to do so, abjectly failed in their duty to safeguard Plaintiff's personal and financial information by providing unauthorized access to Plaintiff's confidential information and accounts.

16.     Upon information and belief, Defendants failed to implement, maintain or adhere to security policies and procedures sufficient to prevent the unauthorized access to Plaintiff's confidential information and accounts.

17.     Upon information and belief, Defendant TPUSA failed to properly train and supervise its employees to prevent the unauthorized access to Plaintiff's confidential information and accounts.

18.     Upon information and belief, Defendants could have reasonably foreseen the consequences of failing in their duty to implement, maintain, adhere to and execute sufficient security policies and practices to prevent the unauthorized access to consumer data, including that of Plaintiff.

19.     The damage suffered by Plaintiff is directly related to the wrongful conduct of Defendants' facilitating the unauthorized access to Plaintiff's wireless account.

20.     Indeed, but for Defendants' reckless disregard of their obligations, Plaintiff would not have been damaged.

21.     Defendants:

    a.  used their credentials and devices to access Plaintiff's accounts;

    b.  failed to comply with contractual obligations, policies and procedures, including with regards to changing passwords on a regular basis, having sufficiently complex passwords on their devices, clicking on phishing links, providing their passwords to third parties, and failing to promptly report the unauthorized access of their devices and passwords to T-Mobile, Plaintiff, or law enforcement;

    c.  failed to establish, enforce or adhere to rules sufficiently so as to ensure only authorized persons would have access to customer accounts;

    d.  failed to establish, enforce or adhere to rules, policies or procedures for the supervision and control of its officers, agents or employees;

    e.  failed to establish, enforce or adhere to rules, or provide adequate supervision or training sufficient to ensure that all of its employees or agents follow the same policies and procedures.  For example, upon information and belief, Defendants failed to train their employees in accordance with the requirements of their contracts with T-Mobile, as well as failing to perform mandatory background checks on their employees;

    f.  failed to adequately safeguard and protect their devices and accounts, so unauthorized third parties were able to obtain access to Plaintiff's account(s);

    g.  permitted the sharing of and access to user credentials among agents or employees, thus reducing likely detection of, and accountability for, unauthorized access;

    h.  failed to quarantine or suspend access to compromised user credentials or devices in a reasonable time;

    i.  failed to adequately train and supervise their agents and employees, allowing its agents or employees, without authorization or approval, to

unilaterally access and make changes to customer accounts as if the customer had so authorized;

j.   failed to build adequate internal tools to help protect the customers; and against hackers and account takeovers, including protection from phone porting and wrongdoing by its own agents or employees acting on their behalf or on behalf of or at the request of a third party.

22.    As a result of the foregoing acts, errors and omissions by Defendants, and others as will be established throughout discovery of this action, Plaintiff has been damaged in an amount that will be proven at any ultimate hearing or trial.

23.    Plaintiff has duly performed all of their duties and obligations, and any conditions precedent to Plaintiff bringing this action have occurred, have been performed, or else have been excused or waived.

24.    Plaintiff therefore seeks compensatory and equitable relief restoring them to the assets and funds which were illegally taken from them.

IV.    **CAUSES OF ACTION**

**Count I**
**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030 *et seq.***
**Against All Defendants**

25.    Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

26.    The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et seq.*, governs those who intentionally access computers without authorization or who intentionally exceed authorized access and as a result of such conduct, cause damage and loss.

27.    As set forth in the CFAA, the term "exceeds authorized access" means to access a computer and to use such access to obtain or alter information in the computer that the accesser [*sic*] is not entitled so to obtain or alter." 18 U.S.C. §1030(e)(6).

28.     As alleged herein, a SIM-swap attack requires the intentional access to customer computer data by Defendants which exceeds their authority, and which conduct has caused damage and loss.

29.     Defendants are subject to the provisions of the CFAA.

30.     Defendants' conduct, as alleged herein, constitutes a knowing violation of the CFAA.

31.     Defendants are also liable for the acts, omissions, and/or failures, as alleged herein, of any of its officers, employees, agents, co-conspirators or any other person acting for or on behalf of Defendants.

32.     Defendants violated their duty under the CFAA by exceeding their authority to access the computer data and breach the confidentiality of the proprietary information of Plaintiff by using, disclosing, or permitting access to Plaintiff's accounts, information, CPI and/or CPNI without the consent, notice and/or legal authorization of Plaintiff as required by the CFAA.

33.     Section 1030(g) of the CFAA provides:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involved 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage....

34.     Plaintiff has alleged they have suffered damages which exceed the threshold of $5,000.00 as required by Section 1030(c)(4)(A)(i)(I) of the CFAA.

35.     Plaintiff has brought this claim within two (2) years of the date of discovery of the damage pursuant to Section 1030(g) of the CFAA.

36.     Upon information and belief, Defendants' conduct as alleged herein constitutes a violation of Section (a)(5)(A) of the CFAA.

37.     Upon information and belief, Defendants' conduct as alleged herein may constitute an intentional violation of Section (a)(5)(C) of the CFAA.

38.     As a direct consequence of Defendants' violations of the CFAA, Plaintiff has been damaged as set forth throughout this Complaint, plus fees and costs, including reasonable attorneys' fees.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants, for damages, including actual damages, compensatory damages, interest, expenses, costs, attorneys' fees and any other relief available.

### Count II
### Violation of the Stored Communications Act, 18 U.S.C. §2701 *et seq.*
### Against All Defendants

39.     Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

40.     Under the Stored Communications Act ("SCA"), 18 U.S.C. §2701 *et seq.*, "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. §2702(a)(1).

41.     Section 2702(a)(2) of the SCA further states:

> [A] person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service (A) on behalf of, and received by means of electronic transmission from (or created by means of electronic transmission from), a subscriber or customer of such service; [or] (B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for the purposes of

providing any services other than storage or computer processing....

42.     Although the SCA contains several exceptions to the prohibitions set forth in Sections 2702(a)(1) and (2), none of them are applicable to the circumstances at issue in this case.

43.     The SCA creates a private right of action for those "aggrieved by any violation" of its provisions. 18 U.S.C. §2707(a).

44.     The conduct of Defendants, as alleged herein, constitutes a knowing and/or intentional violation of the SCA's Section 2702(a).

45.     Plaintiff has been "aggrieved" by the conduct of Defendants, as alleged herein, in that Plaintiff's property has been stolen as described herein.

46.     Pursuant to the applicable provisions of the SCA, Plaintiff is entitled to actual and statutory damages, as well as reasonable attorneys' fees and costs. See 18 U.S.C. §2702(c).

WHEREFORE, Plaintiff demands entry of a judgment against Defendants, for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

**Count III**
**Violations of the Federal Communications Act of 1934, 47 U.S.C. §151** *et seq.*
**Against Defendant TPUSA**

47.     Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

48.     The Federal Communications Act of 1934 ("FCA"), 47 U.S.C. §151 *et seq.*, regulates interstate telecommunications carriers, including TPUSA.

49.     TPUSA is a "common carrier" or a "telecommunications carrier" engaged in interstate commerce by wire for the purposes of furnishing communication services within the meaning of Section 201(a) of the FCA. 47 U.S.C. §201(a).

50.     Accordingly, TPUSA is subject to the substantive requirements of Sections 201 through 222 of the FCA. *See* 47 U.S.C. §201-222.

51.     Under Section 201(b) of the FCA, common carriers may implement only those practices, classifications, and regulations that are "just and reasonable" and practices that are "unjust or unreasonable" are unlawful.47 U.S.C. §201(b).

52.     Section 206 of the FCA, entitled "Carriers' liability for damages" provides:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as a part of the costs in the case.

53.     Section 207 of the FCA, entitled "Recovery of damages" further provides:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the FCC as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction....

54.     Section 222(a) of the FCA provides that a telecommunications carrier has a duty to protect the confidentiality of the proprietary information of their customers. 47 U.S.C. §222(a).

55.     Additionally, Section 222(c) of the FCA explicitly requires that telecommunications carriers protect their customers' CPNI. 47 U.S.C. §222(c).

56.     According to the CPNI Rules:

> Safeguarding CPNI.  Telecommunications carriers must take reasonable measures to discover and protect against attempts to gain unauthorized access to CPNI.  Telecommunications carriers must properly authenticate a customer prior to disclosing CPNI based on

customer-initiated contact, online account access, or an in-store visit.

57.   TPUSA violated its duties under Section 222 of the FCA and the CPNI Rules by failing to protect Plaintiff's accounts, information, CPI and CPNI by using, disclosing, or permitting access to Plaintiff's account, information, CPI and CPNI without the consent of, notice to, and/or legal authorization by Plaintiff as required by the FCA, in that upon information and belief:

    i.  A TPUSA employee, representative or agent used TPUSA hardware/software or allowed their hardware/software to be used to access and utilize Plaintiff's account, information, CPI and CPNI for the purpose of stealing from Plaintiff or to engage in a conspiracy to steal from Plaintiff;

    ii.  Plaintiff's accounts, information, CPI and CPNI were disclosed to someone other than Plaintiff by an agent of TPUSA; and

    iii. Plaintiff's CPI and CPNI were disclosed to someone who was not properly authenticated by TPUSA.

58.   TPUSA is liable for the acts, omissions, and/or failures of its officers, employees, agents, or any other persons acting for or on behalf of TPUSA.

59.   TPUSA failed to protect the confidentiality of Plaintiff's account, information, CPI and CPNI when it disclosed or facilitated the disclosure of Plaintiff's accounts, information, CPI and CPNI to third-parties without Plaintiff's authorization or permission.

60.   TPUSA then took affirmative steps to hide information regarding this information from law enforcement and Plaintiff.

61.   TPUSA's conduct constitutes knowing violations of the FCA, including sections 201(b) and 222, as well as the CPNI Rules and Implementing Regulations.

62.   TPUSA is liable for the acts, omissions, and/or failures of its officers, employees, agents, or any other persons acting for or on behalf of TPUSA.

63.   TPUSA's violation(s) of the FCA allowed unauthorized parties to impersonate

Plaintiff in transactions with others, including Plaintiff's email and cryptocurrency account providers.

64.      TPUSA violated the FCA, including Section 222, by allowing an unauthorized party to access Plaintiff's accounts, information, CPI and CPNI, resulting in, *inter alia*, Plaintiff's loss of property.

65.      As a direct consequence of TPUSA's violations of the FCA, Plaintiff has been damaged through the loss of his property and other associated damages.

66.      Had TPUSA not facilitated the unauthorized access to Plaintiff's account, Plaintiff would not have suffered this loss.

67.      TPUSA, by its inadequate procedures, practices, and policies, engages in behavior which:

> i. Fails to provide reasonable, appropriate and sufficient security to prevent unauthorized access to customers' wireless accounts, CPI and CPNI;
>
> ii. Allows unauthorized persons to be authenticated or to bypass authentication;
>
> iii. Grants improper access to sensitive customer account information; and
>
> iv. Prevents customers from discovering the underlying facts surrounding the unauthorized account access.

68.      Moreover, TPUSA failed to establish and implement reasonable policies, procedures and safeguards governing the creation, access, and authentication of user credentials and the ability of their devices to access customers' accounts, creating an unreasonable and foreseeable risk of unauthorized access.

69.      As such, in violation of the FCA, TPUSA has failed to ensure that only authorized persons have access to customer account data and that customers' accounts, CPI and CPNI are secure.

70.      Among other things, TPUSA:

i.   Failed to establish and enforce rules and procedures sufficient to ensure only authorized persons have access to customer accounts and information, including that of Plaintiff;

ii.  Failed to establish and enforce appropriate rules, standards, policies and procedures for the supervision, training, hiring, control and discipline of its officers, employees, agents, and/or vendors;

iii. Failed to establish and enforce rules, policies and procedures, including a written identity theft program under the Red Flags Rule, or to provide adequate supervision or training sufficient to ensure that its employees, agents and/or vendors are aware of and follow such rules, policies and procedures, in order to prevent access to customer accounts by unauthorized persons;

iv.  Failed to establish and enforce rules and procedures to ensure TPUSA's employees and agents adhere to the security instructions of customers with regards to accessing customers' accounts, including that of Plaintiff, and that they cannot improperly bypass the same;

v.   Failed to adequately safeguard and protect customer wireless accounts;

vi.  Permitted the sharing of and access to user credentials among agents or employees;

vii.    Failed to prevent the ability of employees, officers, agents and vendors to access and make changes to customer accounts without specific customer authorization;

viii.   Facilitated the porting out of cell phone numbers without confirming that the request was coming from a legitimate source;

ix.  Lacked proper monitoring and therefore failed to monitor its systems for the presence of unauthorized access in a manner that would allow TPUSA to detect, prevent or address intrusions, breaches of security, and unauthorized access to customer information in a timely manner;

x.   Failed to timely prevent, address, communicate, diagnose and/or determine the cause of Plaintiff's service interruption;

xi.  Failed to timely notify law enforcement, Plaintiff, T-Mobile or anyone else of the unauthorized access to customer accounts and their own

devices;

    xii.    Took affirmative steps to preclude customer, such as Plaintiff, from learning information regarding the foregoing.

71.    The inadequate security measures, policies and safeguards employed by TPUSA created a foreseeable and unreasonable risk of unauthorized access to the accounts of its customers, including that of Claimant.

72.    Upon information and belief, TPUSA has long been aware of its inadequate security measures, policies and safeguards, and nevertheless, induced customers into believing that its systems were secure and compliant with applicable law.

73.    TPUSA, despite knowing the risks associated with unauthorized access to customer accounts, failed to utilize reasonable and available methods to prevent or limit such unauthorized access, including those perpetrated using their own credentials and devices.

74.    TPUSA failed in its duty to protect and safeguard customer information and data pursuant to federal law.

75.    Had TPUSA implemented appropriate and reasonable security measures, Plaintiff would not have been damaged.

WHEREFORE, Plaintiff demands entry of a judgment against Defendant TPUSA for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

### Count IV
### Negligence
### Against All Defendants

76.    Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

77.    Defendants had general duties to act in a reasonably careful manner in order to avoid

damaging Plaintiff.

78.     In addition, Defendant Koyfman had duties to Plaintiff as an employee of T-Mobile USA, Inc., including, but not limited, duties to: protect customer information; change her credentials every so often; make her credentials of particular complexity; and to only access customer information for approved purposes.

79.     Defendant TPUSA also had additional duties to Plaintiff as an agent of T-Mobile USA, Inc., including duties to: protect customer information; screen and educate their employees/agents; enforce certain hardware and software requirements; have programs, policies, and procedures in place to prevent and address data breaches; and to only access customer information for approved purposes.

80.     But for Defendant Koyfman using, or allowing, her credentials to be used to access Plaintiff's T-Mobile account and perform an unauthorized SIM-swap to a phone not under Plaintiff's control, Plaintiff would not have been harmed.

81.     But for Defendant TPUSA using, or allowing, their devices, hardware and software to be used to access Plaintiff's T-Mobile account and perform an unauthorized SIM-swap to a phone not under Plaintiff's control, Plaintiff would not have been harmed.

82.     And but for the actions and omissions of Defendants as described throughout this Complaint, and as will be established at any ultimate hearing or trial in this action, Plaintiff would not have suffered damages.

83.     Plaintiff has been damaged through the loss of their property as described herein.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs,

attorneys' fees and any other relief available.

**Count V**
**Negligent Hiring, Retention and Supervision**
**Against Defendant TPUSA**

84.     Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

85.     At all material times herein, TPUSA's agents, officers, and employees, including, but not limited to, those directly or indirectly responsible for, or involved in, allowing unauthorized access to Plaintiff's confidential and proprietary account information were under TPUSA's direct supervision and control.

86.     Upon information and belief, TPUSA hired, retained, controlled, trained and supervised the officers, agents and employees under their control in a negligent fashion, and knew or should have known that such officers, agents and employees could allow or obtain unauthorized access to customer accounts, including that of Plaintiff.

87.     Upon information and belief, TPUSA and its officers, employees and agents failed to implement or adhere to systems and procedures necessary to prevent unauthorized access to customer accounts, including that of Plaintiff.

88.     Upon information and belief, TPUSA's negligent hiring, retention, control, training and supervision of their officers, employees and agents allowed the unauthorized access to Plaintiff's accounts which resulted in damages to Plaintiff.

89.     TPUSA's failure to exercise reasonable care in screening, supervising, and controlling its officers, agents and employees was a breach of its duty to its customers, including Plaintiff.

90.     TPUSA's duty to protect customers' data from unauthorized access is required by

contract, federal and state law.

91.    It was entirely foreseeable to TPUSA that unauthorized persons would attempt to gain unauthorized access to customers' data and, despite this, TPUSA failed to implement or adhere to sufficient safeguards and procedures to prevent such unauthorized access.

92.    Upon information and belief, TPUSA engaged in the acts alleged herein and/or condoned, permitted, authorized and/or ratified the conduct of its officers, agents and employees.

93.    As a direct consequence of TPUSA's negligent hiring, retention, control and supervision of its officers, agents and employees, who enabled or obtained the unauthorized access to Plaintiff's account, Plaintiff was damaged through the loss of their property as described herein.

WHEREFORE, Plaintiff demands entry of a judgment against Defendant TPUSA for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

### Count VI
### Breach of Contract
### Against Defendant TPUSA

94.    Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

95.    Defendant TPUSA had a contract with T-Mobile USA, Inc. (the "**Contract**") whereby Defendant TPUSA would provide services to T-Mobile USA, Inc. customers in exchange for agreeing to certain terms and conditions of that contract.

96.    Those terms and conditions included many provisions regarding staffing requirements, monitoring and reporting requirements, hardware and software requirements, training requirements, insurance requirements, and other duties required of Defendant TPUSA.

97.    Plaintiff was a customer of T-Mobile USA, Inc. and had a contract for cell-phone

service with T-Mobile USA, Inc.

98.     T-Mobile customers, including Plaintiff, were intended third party beneficiaries of that Contract between TPUSA and T-Mobile USA, Inc.

99.     Defendant TPUSA, without legal justification or cause, before, during, and after the time of the unauthorized SIM-swap performed on Plaintiff's account and the subsequent theft of his property, was in breach of its duties under the Contract.

100.    As a result of Defendant TPUSA's breach of that Contract, Plaintiff has suffered and will continue to suffer direct and consequential damages as will be established at any ultimate hearing or trial in this action.

101.    As a result of Defendant TPUSA's breach of that Contract, Plaintiff has sustained financial hardship and inconvenience, all of which are continuing and will continue until the foreseeable future.

102.    Upon information and belief, all conditions precedent to Plaintiff's recovery and Defendant's liability thereunder have been performed or have occurred.

103.    Defendant TPUSA breached its Contract with T-Mobile USA, Inc. and intended third-party beneficiary Plaintiff, by failing to fulfill its duties under that Contract and has thereby caused Plaintiff to suffer losses as described herein.

104.    A copy of the Contract is unavailable to Plaintiff, but is in the possession, custody and control of Defendant TPUSA, Inc.

WHEREFORE, Plaintiff demands entry of a judgment against Defendant TPUSA for damages, including actual damages, compensatory damages, interest, expenses, costs, attorneys' fees and any other relief available.

## Count VII
### Conversion
### Against All Defendants

105.  Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

106.  On or around January 18, 2023 Plaintiff had actual or constructive possession of certain property, in the nature of cryptocurrency, and/or an immediate right to possession of that property as outlined throughout this Complaint.

107.  Plaintiff remains entitled to the possession of his property, which at the time of the theft was worth at least $49,941.08.

108.  On or around January 18, 2023 Defendants took the property described above from Plaintiff's possession as described above and converted the same to their own use.

109.  Defendants, through their action, inaction, and conduct deprived Plaintiff of his right to, use and/or possession of that property, without Plaintiff's consent and without legal justification.

110.  As a proximate result of the conduct of Defendants, Plaintiff has been damaged in the sum to be proven at trial, but of at least $49,941.08, with interest accruing from the date each component of said sum was converted by Defendants.

111.  As a further proximate result of the Defendants' acts herein alleged, Plaintiff has also expended substantial sums of time and money in pursuit of the sums converted by Defendants. As a result, Plaintiff is entitled to recovery of the wrongfully converted funds and property, any benefits derived therefrom, and Plaintiff's fees and costs.

112.  Upon information and belief, Plaintiff alleges that Defendants have engaged in despicable conduct as herein alleged, with an intent to injure Plaintiff and to subject Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights and that said actions were done

intentionally, knowingly, fraudulently, maliciously and oppressively. Plaintiff is therefore entitled to punitive or exemplary damages against Defendants in an amount sufficient to punish and make a public example of each of the Defendants.

113. Plaintiff has suffered and will continue to suffer damages due to the conduct of Defendants as set forth herein.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

### Count VIII
### Civil Conspiracy
### Against All Defendants

114. Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

115. As set forth throughout this Complaint, there did exist a combination of two or more persons acting with a common purpose to do an unlawful act, namely to deprive Plaintiff of their right to, possession, and use of his cryptocurrency.

116. Defendants have taken multiple steps to effectuate that common purpose, through utilizing the TPUSA device(s) and Alla Koyman's user credentials, swapping Plaintiff's SIM-card to a SIM-card under Defendants' control, logging into Plaintiff's email and cryptocurrency account(s), stealing Plaintiff's cryptocurrency, concealing the identities of those individuals responsible, and refusing to provide information which would have allowed Plaintiff to attempt to regain their property.

117. Defendants took these actions without justification, and with the intent to injure Plaintiff.

118. As a result of the knowing and intentional action, inaction, conduct and polices of

Defendants, Plaintiff has suffered, and will continue to suffer damages as set forth herein.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

**Count IX**
**Civil Aiding and Abetting**
**Against All Defendants**

119.    Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

120.    There does exist an independent wrong, including that Plaintiff had their cryptocurrency stolen.

121.    Defendants knew of the existence of those wrongs, including the theft of Plaintiff's cryptocurrency.

122.    Defendants provided substantial assistance in effectuating that wrong, including but not limited to: providing access to the TPUSA device(s), Alla Koyfman's credentials, and Plaintiff's accounts; concealing that access for a period of time; intentionally destroying and/or failing to preserve evidence necessary to track those individuals responsible for the theft; and taking steps to conceal the identifies of those individuals responsible for the theft.

123.    As a result of those knowing and intentional actions, inactions, conduct and polices of Defendants, Plaintiff has suffered, and will continue to suffer damages as set forth herein.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

### Count X
### Money Had and Received
### Against All Defendants

124.     Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

125.     From January 18, 2023, Defendants became indebted to Plaintiff in the amount of a sum to be proven at trial, but of at least $49,941.08, for money had and received by Defendants for the use and benefit of Plaintiff.

126.     Neither the whole nor any part of this sum has been paid back to Plaintiff by Defendants, and there is now due, owing, and unpaid the sum to be proven at trial, which is at least $49,941.08, with interest accruing from the date each component of said sum was converted by Defendants.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants for damages, including actual damages, compensatory damages, interest, expenses, costs, attorneys' fees and any other relief available.

### Count XI
### Imposition of a Constructive Trust
### Against All Defendants

127.     Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

128.     Upon information and/or belief, Plaintiff alleges that Defendants maintained funds, inter alia, in bank, brokerage and cryptocurrency accounts in their names or otherwise for their benefit.

129.     Upon information and/or belief, Plaintiff alleges that Defendants purchased property with the converted funds belonging to Plaintiff.

130.     By virtue of the wrongful acts alleged herein, Defendants held the property described

and all profits and benefits derived therefrom above as a constructive trustee for Plaintiff's benefit.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

### Count XII
**Violation(s) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**73 P.S. §201-1 *et seq.***
**Against Defendant TPUSA**

131.    Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

132.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-1, *et seq.*, provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…are hereby declared unlawful." 73 P.S. §201-3.

133.    Section 201-2(4) of the UTPCPL defines "unfair or deceptive acts or practices" to include the following conduct:

> i.      Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
>
> ii.     Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to, or after a contract for the purchase of goods or services is made; and
>
> iii.    Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.

134.    TPUSA's acts as alleged herein, including (but not limited to) representations about the level of data security, confidentiality and employee training they employ to keep customers' data secure, induced customers to engage with TPUSA notwithstanding TPUSA's knowledge that its

security protocols and procedures were inadequate to prevent unauthorized access to customers' accounts, information, Customer Proprietary Information ("CPI") and Customer Proprietary Network Information ("CPNI").

135.　TPUSA further failed to comply with written guarantees and warranties given to Plaintiff in his relationship with T-Mobile, including that in providing services to T-Mobile and Plaintiff they would comply with all T-Mobile policies, procedures and contractual requirements.

136.　Plaintiff justifiably relied on these representations, warranties, and guarantees.

137.　TPUSA's actions, as alleged herein, violated federal and state law, particularly those relating to the safeguarding of customers' CPI and CPNI, and such violations or *per se* violations of the above-referenced provisions of the UTPCPL.

138.　Given TPUSA's superior knowledge of its systems, procedures and practices, coupled with its experience with past breaches of data security (and specifically SIM-swaps), Plaintiff was a foreseeable victim of the violative acts of TPUSA.

139.　By allowing unauthorized access to Plaintiff's confidential and proprietary information, TPUSA facilitated unauthorized third parties, such as Defendant Alla Koyfman, to prey upon innocent victims like Plaintiff.

140.　By failing to timely and properly prevent and/or diagnose the unauthorized access to their systems, or to notify Plaintiff, law enforcement, or T-Mobile of the same, TPUSA facilitated unauthorized third parties to access Plaintiff's confidential and proprietary information and to use said information to steal Plaintiff property.

141.　Had TPUSA accurately represented the nature of its services, including the significant lapses in security they had been suffering, as well as their security measures (or lack thereof) Plaintiff would not have become T-Mobile's customer and would not have been damaged by those who gained unauthorized access to Plaintiff's CPI and CPNI from T-Mobile.

142. Therefore, TPUSA has violated the above-referenced provisions of 73 Pa.C.S. §201-2(4).

143. Section 201-9.2(a) of the UTPCPL authorizes a private cause of action for any person "who purchases or leases goods or services primarily for personal, family or household purposes." 73 P.S. §201-9.2(a).

144. UTPCPL also authorizes an award of up to three (3) times the actual damages sustained for its violation, and attorneys' fees.

145. Plaintiff has suffered and will continue to suffer damages due to the conduct of TPUSA as alleged herein.

146. Plaintiff seeks damages, including attorneys' fees, costs and expenses for Defendants' knowing and intentional violations of the UTPCPL.

WHEREFORE, Plaintiff demands entry of judgement against Defendant TPUSA for damages, including compensatory damages, treble damages, attorneys' fees, interest, costs and expenses under the UTPCPL, and any other relief deemed just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment in their favor and against Defendants, and for the following:

A. Judgment for Plaintiff on all counts;

B. Actual damages;

C. Incidental damages;

D. Consequential damages;

E. Statutory damages;

F. Treble damages;

G.      Punitive damages;

H.      Attorneys' fees;

I.      Costs and expenses;

J.      Pre- and post-judgment interest; and

K.      Such other relief as deemed just and appropriate.

Respectfully Submitted,

LAW OFFICES OF KENT PETRY

Kent Petry (PA Attorney I.D. No. 207659)
PO Box 3387
Warminster, PA 18974
(T): (215) 322-1084
(F): (215) 798-8054
kent@petrylaw.net

*Attorney for Plaintiff*

Dated: September 25, 2025

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury for all counts.

Respectfully submitted,

LAW OFFICES OF KENT PETRY

Kent Petry (PA Attorney I.D. No. 207659)
PO Box 3387
Warminster, PA 18974
(215) 322-1084

*Attorney for Plaintiff*

Dated: <u>September 25, 2025</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

SCOTT ANDERSON                                    :                        CIVIL ACTION
                                                  :
              v.                                  :
TELEPERFORMANCE SE  and                           :
ALLA KOYFMAN                                       :            NO. 25-5527

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for
plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of
filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse
side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said
designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on
the plaintiff and all other parties, a Case Management Track Designation Form specifying the track
to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (x)

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.               ( )

| 9/25/2025 | KENT PETRY, ESQ. | PLAINTIFF ANDERSON |
| --- | --- | --- |
| Date | Attorney-at-law | Attorney for |
| 215-322-1084 | 215-798-8054 | kent@petrylaw.net |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02


American LegalNet, Inc.
www.FormsWorkFlow.com

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: _____LEHIGH COUNTY, PA_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?     Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?     Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?     Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.     Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☒ 16. All Other Federal Question Cases. *(Please specify)*: 15 U.S.C. 1030 / 18 U.S.C. 2701

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☐   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☒   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.