**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCOTT ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>TPUSA, INC. and ALLA KOYFMAN,<br><br>Defendants. | CIVIL ACTION NO. 5:25-cv-05527-JLS |

**REPLY IN SUPPORT OF DEFENDANT TPUSA, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant, TPUSA, Inc. submits this Reply in support of its Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 24).

## I. Introduction

Nearly all of Plaintiff's thirteen causes of action are time-barred under the applicable statutes of limitation, and Plaintiff's attempts to invoke the discovery rule or other equitable doctrines are unavailing as a matter of law. Even setting aside the statute of limitations issues, Plaintiff's untimely[1] Opposition (ECF 27) fails to directly address TPUSA's legal insufficiency arguments, opting instead to either ignore them entirely or redirect the Court's attention to unsupported recitations of the elements of his claims, disguised as factual allegations. When stripped of conclusory subterfuge, however, the Amended Complaint fails to state any plausible

[1] As a threshold matter, TPUSA's Motion to Dismiss Plaintiff's Amended Complaint should be granted as uncontested, as Plaintiff failed to file his Opposition in the time required by the Rules (or by March 10, 2026). *See* (ECF 24, 27); *see also* Local Rule of Civil Procedure 7.1(c) (permitting the Court to grant a motion as uncontested in the absence of a timely response); *Naeem v. Bensalem Twp.*, CIV.A. 04-CV-1958, 2005 WL 696763, at *1 (E.D. Pa. Mar. 24, 2005) (collecting cases granting Rule 12(b) motions due to a plaintiff's failure to file timely response under Local Rule 7.1(c)).

claim against TPUSA. Plaintiff pleads no facts showing that TPUSA, a third-party vendor for T-Mobile, engaged in any culpable conduct.

Furthermore, all of Plaintiff's claims are independently doomed by a fundamental lack of causation: the Amended Complaint admits a seven-month gap between the June 2022 SIM-swap event and the January 2023 cryptocurrency theft and pleads no facts bridging that gap. Put simply, the theft of Plaintiff's cryptocurrency could have been caused by any number of reasons, and Plaintiff does not (and cannot) allege that the SIM-swap was a sole or contributing cause.

Therefore, the Amended Complaint should be dismissed with prejudice as against TPUSA.

## II. Plaintiff's Claims Against TPUSA Belong in Arbitration

TPUSA again incorporates by reference its Motion to Compel Arbitration and supporting Reply (ECF 16, 20), as well as its arguments regarding arbitrability set forth in its Motion to Dismiss the Amended Complaint. (ECF 24 at 7).

## III. Plaintiff's Argument Regarding Extrinsic Documents is a Red Herring

Plaintiff's objection to TPUSA's reference to extrinsic documents (ECF 27 at 2-4) is a thinly veiled attempt to distract from the deficiencies in his Amended Complaint. TPUSA's Motion to Dismiss rests entirely on the Amended Complaint's own allegations (which, on their face, show the claims are untimely, legally deficient, and/or implausible), not on the attached adverse arbitration award or other exhibits. Those documents were provided to give the Court background and to highlight Plaintiff's shifting story (including calling out Plaintiff's material misrepresentations in the original Complaint that required Plaintiff to retreat and file this Amended Complaint), and not to apply the factual findings or legal conclusions to the arguments in support

of the motion presently before the Court. TPUSA's legal arguments for dismissal stand independently of any outside materials.[2]

**IV. Neither the Discovery Rule Nor Any Other Theory of Tolling Can Save Plaintiff's Untimely Claims Against TPUSA**

Plaintiff admits that he failed to file this action within two years of receiving notice of the SIM-swap and the alleged cryptocurrency theft but contends the statutes of limitation should be tolled under the discovery rule and/or equitable doctrines. (ECF 27 at 5-8). This argument misinterprets applicable Pennsylvania law and rests on conclusory allegations of "concealment" and "fraud" against TPUSA that are unsupported by any facts in the Amended Complaint.

Pennsylvania's discovery rule tolls a statute of limitations only until a "plaintiff has discovered or, by exercising reasonable diligence, should have discovered (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct." *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1124 (3d Cir. 1997) (quotation omitted). Plaintiff attempts to recast the second element by arguing that he could not know the "cause" of his alleged injury until the prior arbitration against T-Mobile allegedly identified TPUSA's and

---

[2] In any event, as noted in TPUSA's Motion, courts may consider documents at the motion to dismiss stage that are "attached to or submitted with the complaint, and any 'matters incorporated by reference or **<u>integral to the claim</u>**, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)) (emphasis added). Here, the prior arbitration is specifically discussed in Plaintiff's Amended Complaint. (*See* ECF 21 at ¶¶ 38, 40, 94). Indeed, Plaintiff affirmatively relies on the occurrence of, and evidence produced during, the prior arbitration in support of his position that the statute of limitations should be tolled. (ECF 27 at 6, 7; ECF 21 at ¶¶ 38, 40, 94). The materials from that arbitration are, therefore, integral to Plaintiff's claims. Plaintiff cannot credibly argue that TPUSA's motion to dismiss should be converted to a motion for summary judgment based on TPUSA's references to those materials when Plaintiff himself expressly references and relies on the arbitration in his pleading.

Koyfman's roles in the SIM-swap. (ECF 27 at 5-8). The *Halliburton NUS Corp.* opinion squarely rejects that theory.

In *Halliburton NUS Corp.*, the Third Circuit held that the discovery rule does not delay accrual until a plaintiff is aware of all facts necessary to bring suit or has identified every potentially liable party. 111 F.3d at 1125 (*citing Zeleznik v. United States*, 770 F.2d 20, 24 (3d Cir. 1985)). Rather, the limitations period begins to run once the plaintiff is aware of the injury and that it was caused, at least in part, by another's conduct. *Id.* In no uncertain terms, the Court held that "the discovery rule does not delay the accrual of a cause of action until the plaintiff has identified every party who may be liable on its claim." *Id*. at 1124-1125 (*citing Zeleznik v. United States*, 770 F.2d 20, 24 (3d Cir. 1985)).

Multiple other courts have held and/or affirmed that it is knowledge of an injury and that another may have caused that injury – *not* knowledge of the identity of all potential tortfeasors – that triggers the running of a statute of limitations. *See Graff v. Kohlman*, 28 Fed. Appx. 151, 154 (3d Cir. 2002) (rejecting plaintiff's theory that his complaint was timely because he did not discover the involvement of certain defendants until well after the initial disputes over his property tax assessment which formed the subject matter of his complaint); *Arneault v. O'Toole*, 864 F. Supp. 2d 361, 408-409 (W.D. Pa. 2012) (rejecting plaintiff's theory that his §1983 claim against a particular defendant was tolled until the date plaintiff uncovered that defendant's role in the underlying due process violation).

Here, it is undisputed that Plaintiff was on notice of his injury at the latest by January 2023, when his cryptocurrency was allegedly stolen, and that he already knew another may have been involved by virtue of T-Mobile's July 2022 notice that Plaintiff had been the victim of a SIM-swap. Those events triggered the running of the statutes of limitation. Plaintiff's contention that

tolling applies until July 2024, when he allegedly learned of TPUSA's supposed "role," is legally irrelevant under *Halliburton NUS Corp.*, *Graff*, and *Arneault*. Accordingly, the discovery rule cannot save Plaintiff's untimely claims against TPUSA.

The doctrines of equitable tolling, equitable estoppel, and fraudulent concealment[3] likewise cannot spare Plaintiff's untimely claims, because Plaintiff claims that T-Mobile, *not* TPUSA, concealed TPUSA's alleged involvement. *See Halliburton NUS Corp.*, 111 F.3d at 1126 (equitable tolling may apply where "**the defendant** has actively misled the plaintiff respecting the plaintiff's cause of action") (emphasis added); (*c.f.* ECF 21 at ¶¶ 33, 34). Nowhere in the Amended Complaint does Plaintiff allege *any* communications with TPUSA, much less communication suggesting TPUSA intended to mislead him. (*See generally*, ECF 21). Plaintiff's equitable estoppel and fraudulent concealment arguments rely on speculative assertions about communications between T-Mobile and TPUSA – allegations divorced from any reliance by Plaintiff and unsupported by facts pled in the Amended Complaint. (*See* ECF 27 at 10-11).

## V. Plaintiff is Unable to Identify Common Law Tort Duties to Avoid Application of the Economic Loss Doctrine to His Negligence Claims

In an attempt to save his negligence and UTPCPL[4] claims, Plaintiff argues that that "[p]urely economic loss may be recoverable under a variety of tort theories." (ECF 27 at 13) (citing *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005)). Relying on *Bilt-Rite*, he further argues that, where a defendant owes a plaintiff a duty independent of a contractual duty, then that plaintiff's tort claims may survive. (*See id.*).

---

[3] The Opposition's "everything but the kitchen sink" approach to addressing TPUSA's statute of limitations argument underscores Plaintiff's awareness of the timeliness issue barring his claims. The Court should reject his volume over substance approach, as none of the legal doctrines raised by Plaintiff to toll the statutes of limitation applies to the facts of this case.

[4] Plaintiff does not directly address TPUSA's argument that the economic loss doctrine bars Plaintiff's UTPCPL claim. (*See* ECF 27 at 12-13). That claim should, therefore, be dismissed as argued in TPUSA's opening brief.

The only "independent duties" Plaintiff identifies, however, are statutory obligations under the Pennsylvania Breach of Personal Information Notification Act ("BPINA"), 73 P.S. §§ 2301 et seq., the UTPCPL, and the Federal Communications Act. (ECF 27 at 13). Plaintiff already asserts standalone statutory claims under each of those laws. (*See* ECF 21 at Counts III, XII, and XIII). He cannot repurpose those same *statutory* duties to manufacture parallel *common law* negligence claims where no independent common law duty exists. His attempt to repackage statutory violations as negligence is precisely the type of duplicative pleading the doctrine is designed to prevent. Accordingly, Plaintiff's negligence and negligent hiring/retention/supervision claims should be dismissed with prejudice.

## VI. Each of Plaintiff's Substantive Claims is Insufficiently Pled and/or Legally Deficient

Plaintiff's Amended Complaint is long on rhetoric, short on substance, and Plaintiff's Opposition does nothing to cure the fundamental defects in his pleading. The Amended Complaint reveals an abundance of speculation and legal conclusions, with virtually no concrete facts that would support any of the thirteen causes of action. It is a noise-filled attempt to relitigate claims already rejected in arbitration against his cell phone carrier, now repackaged against a third-party vendor. But each count is missing essential elements or is otherwise materially deficient, and Plaintiff's Opposition merely repeats the same conclusory assertions:

- **<u>Count I – Computer Fraud and Abuse Act (CFAA)</u>**: The Amended Complaint alleges no facts showing that TPUSA itself accessed any computer system without authorization or exceeded authorized access. Instead, all conduct is attributed to co-Defendant Koyfman, a T-Mobile employee who allegedly "used or allowed her T-Mobile credentials to be used" to effectuate the SIM-swap. (ECF 21 ¶¶ 43-44). Plaintiff attempts to implicate TPUSA through vague references to a "TPUSA employee/agent and/or device" (*id.* ¶ 37; ECF 27 at 14-15), but this opaque "and/or" pleading supplies no well-pled facts of TPUSA's involvement. The Opposition identifies **<u>no</u>** fact that any TPUSA employee intentionally accessed Plaintiff's account or knew of or directed the alleged misconduct. At most, Plaintiff hypothesizes a T-Mobile insider *may* have acted from a TPUSA device, which is insufficient as a matter of law.

- **<u>Count II – Stored Communications Act (SCA)</u>**: The Stored Communications Act ("SCA") imposes liability only where a service provider knowingly discloses the contents of stored communications in its possession. 18 U.S.C. § 2702(a)(1). Plaintiff alleges no such conduct by TPUSA. The Opposition relies on conclusory assertions that TPUSA qualifies as a provider of electronic communication services merely because it serves as a customer service vendor for T-Mobile or allegedly operates a foreign entity named "Majorel Azerbaijan Telecommunication Limited Liability Company." (ECF 27 at 16). These allegations, the latter of which does not even appear in the Amended Complaint, do not establish that TPUSA itself provides an electronic communication service or that it divulged the contents of any communication "by that service." Plaintiff's further assertion that TPUSA's alleged "obtaining" of account access necessarily caused all of Plaintiff's past and future communications to be "divulged" is both unsupported by the pleadings and devoid of logic. (*Id.*)

- **<u>Count III – Federal Communications Act (FCA)</u>**: Plaintiff's Opposition fails to cite to facts or law to overcome the reality that TPUSA is not a common carrier under the FCA. *See* 47 U.S.C. §§ 206, 207; 47 U.S.C. § 153(11) (defining "common carrier" as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy"). Again, like in response to TPUSA's SCA arguments, the Opposition relies on conclusory assertions that TPUSA qualifies as a common carrier merely because it serves as a customer service vendor for T-Mobile or allegedly operates a foreign entity named "Majorel Azerbaijan Telecommunication Limited Liability Company." (ECF 27 at 17). Plaintiff fails to explain how TPUSA's work for a common carrier somehow converts it into a common carrier.

- **<u>Counts IV and V – Negligence and Negligent Hiring, Retention, and Supervision</u>:** Plaintiff fails to identify any common law tort duty that TPUSA owed to him that could support either Count, and the Opposition does not cite any authority establishing such a duty. (ECF 27 at 17-18). As to the negligent hiring/retention/supervision claim, the Amended Complaint additionally lacks any factual allegations about TPUSA's hiring or supervision practices, and the Opposition offers no additional support for this theory. (*Id.*).

- **<u>Count VI – Breach of Contract</u>:** Plaintiff is not a party to any contract with TPUSA and cannot establish third-party beneficiary status. The Opposition concedes it lacks access to the operative agreement between TPUSA and T-Mobile and, instead, speculates about the agreement's contents. (ECF 27 at 18). That speculation is insufficient, particularly where TPUSA previously reproduced the portions of the Worldwide Call Center Services Agreement that expressly disclaims third party rights of the type Plaintiff is attempting to invoke. (ECF 24 at 16). The Opposition offers no response to that contractual bar.

- **<u>Counts VII (Conversion), Count X (Money Had and Received), and Count XI (Constructive Trust)</u>:** All of these counts require allegations that TPUSA possessed and/or exercised control over Plaintiff's money or property at issue (*i.e.* the allegedly stolen cryptocurrency). Plaintiff cannot satisfy this element even at the pleadings stage, as it remains *unknown* who allegedly stole Plaintiff's cryptocurrency and how they stole it, more than seven months after the underlying SIM-swap. Rather than addressing this defect, the

Opposition glosses over it by reciting elements of a conversion claim and vaguely asserting that the "Amended Complaint is replete with additional factual allegations" supporting these counts. (ECF 27 at 19). It is not. Plaintiff identifies no specific allegations – because none exist – showing that TPUSA ever possessed or controlled Plaintiff's cryptocurrency.

**<u>Counts VIII and IX – Civil Conspiracy and Civil Aiding and Abetting</u>**: Plaintiff's Opposition fails to rescue Counts VIII or IX because it offers no factual basis to support the essential elements under Pennsylvania law. A civil conspiracy requires "a combination of **<u>two or more persons acting with a common purpose</u>** to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose," **<u>along with an overt act</u>** and resulting legal harm. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (emphasis added). While the Opposition asserts that the Amended Complaint is "replete" with supporting facts, it identifies none. (ECF 27 at 19-20). To the contrary, Plaintiff relies on speculation that Koyfman acted "in conjunction with a TPUSA employee/agent and/or device," (ECF 21 ¶ 37), without alleging who supposedly conspired, when or how any agreement was formed, or what TPUSA agreed to do.

The aiding and abetting claim fares no better. Liability requires allegations that TPUSA knew of the primary tortfeasor's wrongful conduct and substantially assisted or encouraged it. *See* Restatement (Second) of Torts § 876(b); *Koken v. Steinberg*, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003); *Meyer v. Del. Valley Lift Truck, Inc.*, 392 F. Supp. 3d 483, 496-97 (E.D. Pa. 2019). The Opposition again offers only legal conclusions (ECF at 19-20), alleging no facts showing TPUSA's knowledge of the alleged scheme. At most, Plaintiff suggests a TPUSA device was used without authorization – circumstances insufficient to transform TPUSA into anything more than a passive bystander.

- **<u>Count XII – UTPCPL</u>**: Plaintiff fails to allege any consumer transaction with TPUSA or any deceptive conduct directed by TPUSA at him. The Opposition attempts to overcome this pleading deficiency by asserting TPUSA "hid" information about the SIM-swap from *T-Mobile* or violated BPINA, by allegedly failing to notify Plaintiff. (ECF 27 at 20). That argument fails. It is undisputed that T-Mobile – Plaintiff's wireless carrier – was aware of the SIM-swap and timely notified Plaintiff of that breach months before the alleged cryptocurrency theft.

- **<u>Count XIII – BPINA</u>**: Plaintiff's Opposition concedes Count XIII under BPINA, and the claim should be dismissed with prejudice. (*See* ECF 27 at 20-21). BPINA does not provide a private cause of action; enforcement authority lies exclusively with the Pennsylvania Attorney General. *See* 73 P.S. § 2308; *see also Dittman v. UPMC*, 196 A.3d 1036, 1050 n.16 (Pa. 2018) (no private cause of action).

## VII. Plaintiff Fails to Link TPUSA's Alleged Conduct to the Harm

Even if any of Plaintiff's claims were to survive the defects discussed above, they would still fail for lack of proximate causation. Each cause of action – whether statutory, tort, or

contractual – requires a plausible causal link between TPUSA's alleged conduct and Plaintiff's injury. Plaintiff's own allegations sever that link. He alleges the SIM swap occurred on June 21, 2022; that T-Mobile notified him on July 15, 2022; and that the cryptocurrency theft occurred on January 18, 2023, months later. The Amended Complaint offers no factual explanation bridging that gap. Plaintiff's Opposition insists that causation is a fact issue for the jury and that he need not meet a "probability requirement" at the pleading stage. (ECF 27 at 21-22). But *Twombly* and *Iqbal* still require a coherent causal narrative, not a speculative leap from "SIM swap" to "theft" with nothing in between. Plaintiff does not allege that the wrongdoers maintained access to his accounts, installed malware, or obtained his crypto credentials in June 2022. To the contrary, he concedes he was aware of the breach by July 2022 and took no action to secure his assets thereafter.

Plaintiff's attempt to dismiss the arbitrator's finding that there was "no evidence connecting" the two "distant events" misses the point. (ECF 27 at 22). The Court need not rely on that award to conclude that Plaintiff's own allegations fail to plausibly allege causation. The arbitrator's observation merely underscores what is already apparent from the pleadings: there is no factual bridge between the alleged misconduct and the alleged harm. While causation may ultimately be a jury question, Plaintiff must first plead facts that, if true, would support a reasonable inference of proximate cause. He has not. All of Plaintiff's claims against TPUSA independently fail on this ground.

## VIII. Conclusion

For the forgoing reasons and those in TPUSA's opening brief, this Court should grant TUPSA's Motion and dismiss Plaintiff's Amended Complaint with prejudice as against TPUSA.

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

Dated: March 18, 2026

By: */s/ Brian M. Lands*
Brian M. Lands, Esq.
PA ID 318573
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Telephone: 215-575-3112
Facsimile: 215-278-2594
blands@shb.com

*Attorneys for Defendant TPUSA, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2026, I electronically filed the foregoing *Reply in support of Defendant TPUSA, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Brian M. Lands*
Brian M. Lands, Esquire

*Attorney for Defendant TPUSA, Inc.*